**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JENNIFER HOFFMAN,** | : | **Civil No. 4:14-CV-1978** |
| **JOSHEWA SINK,** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **STATE FARM FIRE** | : | |
| **AND CASUALTY COMPANY,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM OPINION**

## I.     INTRODUCTION

In July 2013, a fire broke out in the basement of the Bloomsburg, Pennsylvania home of Jennifer Hoffman and Joshewa Sink.  When the fire department arrived shortly after the relatively small fire was discovered, it had already been extinguished and no water or fire retardant was necessary. Nevertheless, the fire caused some smoke and soot damage to the basement and first floor interior of the home, and the fire department initially indicated that the blaze was caused by a nearby junction box.  Accordingly, firefighters recommended that the plaintiffs turn off power to the home, rendering it uninhabitable.

Ms. Hoffman and Mr. Sink's home was covered by an insurance policy issued by State Farm Fire and Casualty Company ("State Farm"). State Farm assigned the loss to Scott Fleming, a claim adjuster. State Farm also promptly provided the homeowners with contact information for a third-party servicer who would assist them in securing temporary housing and furnishings while the home was repaired and the fire investigated. Before the claim was adjusted, however, State Farm had the scene inspected by an origin and cause investigator ("O&C investigator") who identified several factors which suggested that the fire had been deliberately set, and which cast doubt on the fire department's initial belief that the fire was the result of an electrical malfunction in a junction box. These findings caused State Farm to open an investigation into the claim. This investigation played out over the following five months, subject to several delays, but ultimately resulted in State Farm finding that the claim was covered by the homeowners' insurance policy. Ultimately, State Farm indemnified the plaintiffs nearly $150,000 in losses to the home and personal property stemming from the fire.

The plaintiffs were dissatisfied with State Farm's adjustment of the claim, and with the length of time that the investigation and claims process took. They also were frustrated by what they claimed was unprofessional treatment by State Farm representatives, and with State Farm's refusal to pay for a number of expenses that the plaintiffs insist were attributable to the fire itself, but which State

Farm found were not directly related to the fire or, in some instances, were highly suspicious, including claims for more than $6,000 in electrical work that it now appears had nothing to do with the plaintiffs' home.  Accordingly, they filed this civil action, bringing one count for breach of contract, and one count under Pennsylvania's bad-faith law.  The case was initially filed in state court, and was removed to this Court on October 13, 2014.  The action was subsequently referred to the undersigned for pretrial management, and the parties later consented to have this Court preside over all further proceedings, through and including trial if necessary.

Following the close of discovery, State Farm has moved for summary judgment on both of the plaintiffs' claims.  The motion is fully briefed and ripe for disposition.  Following review of that motion, the Court finds that the plaintiffs have failed to come forward with sufficient evidence to support their bad-faith claim.  Despite having had ample opportunity to identify evidence in the record to substantiate this claim – which, under Pennsylvania law, must be proven by clear and convincing evidence – the plaintiffs have relied upon bare allegations and narrative argument that does little more than summarize bad-faith law in Pennsylvania, without showing how the facts of this particular case could support a claim under the statute.  Despite reading the parties' briefs and the evidence that

the defendant submitted in the light most favorable to the plaintiff, the Court concludes that summary judgment is warranted on this claim.

The plaintiffs' claim for breach of contract presents a somewhat closer, and narrower, issue.  This claim essentially boils down to the plaintiffs' assertion that State Farm has breached the insurance contract by failing to make payments that fully indemnified the plaintiffs' claimed losses to their home, personal property and alternative living arrangements following the fire.  In reviewing this claim, it appears that the plaintiffs' damages claims have shifted, morphed and transmogrified over time.  In its current form these claims now include claimed expenses that were not identified until well after discovery had closed, and even include claims for repairs that undisputed evidence now shows were never even performed at the plaintiffs' home.

Review of the record in this case reveals very little support for the plaintiffs' contract claim, something that is perhaps most apparent in the plaintiffs' brief opposing the defendant's motion for summary judgment.  Whereas State Farm has provided a lengthy factual statement, with pinpoint citation to scores of exhibits, documentary evidence and testimony, the plaintiffs have not filed a countervailing statement of facts, and instead appear to be inviting the Court to scour the defendants' exhibits in an effort to find disputed material facts.  The plaintiffs fail to respond in any meaningful way to State Farm's apparently undisputed assertion

4

that the plaintiffs are seeking recovery for amounts that were not spent on their home, and for amounts that the plaintiffs elected to spend to put new carpet throughout their home, despite State Farm having paid to have the wood floors refinished.  Similarly, the plaintiffs offer nothing of substance in response to State Farm's refusal to pay for the installation of multiple windows, which the plaintiffs elected to do after discovering that one of the windows in their home had been cracked – but with no evidence that this single cracked window was caused directly by the fire.  It appears that rather than provide evidentiary support and legal argument to support their contract claim, the plaintiffs instead would have the Court find that disputed issues must exist because there is a disagreement over the amount of money that State Farm has provided in response to the claims.  Upon careful consideration of the parties' moving papers, the evidence that the defendants have provided, and the near total absence of record citation offered by the plaintiffs, the Court concludes that the plaintiffs have failed to come forward with timely and substantive evidence necessary to surmount State Farm's motion with respect to the breach-of-contract claim.

Accordingly, for the reasons that follow, the defendant's motion for summary judgment will be granted.

## II.   **FACTUAL BACKGROUND**[1]

On or about July 12, 2013, a fire occurred in the basement of the plaintiffs'
Bloomsburg, Pennsylvania home.  At the time of the loss, the home was insured
under a policy of homeowners insurance with State Farm at Policy No. 78-B8-
M375-7 (the "policy").  (Doc. 55, Ex. B.)  The policy was considered "new
business," as Jennifer Hoffman purchased the policy on June 26, 2013,
approximately three weeks before the fire occurred.  (*Id.*, Ex. C.)  The policy
provides coverage for Accidental Direct Physical Loss that occurs during the
policy period.  (*Id.*, Ex. B, at p. 7, § I – Losses Covered.)

No one was home when the fire occurred.  Instead, the fire was discovered
by Joshewa Sink, Ms. Hoffman's boyfriend, who also lived at the home.  Mr. Sink
called the fire department, but by the time firefighters arrived, the blaze had been

---

[1] Before delving into the factual record, the Court is constrained to observe that
despite being obliged to provide a counterstatement of material facts under Local
Rule 56.1, the plaintiffs have elected instead to "rely upon the exhibits attached to
Defendant's Motion[.]" (Doc. 58, p. n.1.)  Remarkably, the plaintiffs' own factual
statement set forth within their brief provides scant citation to any evidence at all,
and instead often  relies upon reference to allegations or, in many instances, mere
argument.  The failure to direct the Court and the defendant to actual evidentiary
support is inadequate in responding to a motion for summary judgment, where the
nonmoving party is obliged to show that there are disputed issues of material fact
that require a trial, and to support these factual assertions with citation to actual
evidence in the record.  To the extent that the plaintiffs have not properly disputed
the facts that State Farm has presented and supported with evidentiary citation,
those facts have been accepted as true. *See* Local Rule 56.1.

extinguished and no water was used.  (*Id.*, Ex. C, State Farm Fire Notes at page SF0081; Ex. oo, Deposition of Joshewa Sink ("Sink Dep.") at 210:17-19 and 212:1-21.)

Ms. Hoffman notified State Farm about the fire on the day it occurred. (Doc. 55, Ex. C, at SF0081.)  She informed the insurer that the fire department indicated that there had been an electrical malfunction in the electrical junction box on a joist in the basement which had caused wiring to melt and drip down onto an elliptical machine.  (*Id.*)  Ms. Hoffman stated that the fire chief provided her with this information, but acknowledged that she had no information about any investigation that he may have undertaken.  (*Id.*)

Upon receiving notice of the fire, State Farm immediately arranged for the plaintiff and her family to obtain alternate housing under Coverage C of the policy, which provided for alternative living expenses ("ALE"), through a third party called ALE Solutions.  (*Id.*)  On July 13, 2013, State Farm approved an advance payment of $1,500 to assist the plaintiffs in their relocation.  (*Id.*, at SF0080.)

On July 17, 2013, less than a week after the fire occurred, State Farm arranged for Lee McAdams, the O&C Investigator, to perform an inspection of the home.  (*Id.*, Ex. D.)  McAdams concluded that the fire could not have originated as the fire department believed because the junction box on the joist was not the source of ignition, and there was no source of ignition on the elliptical machine,

7

though the fire appeared to have started underneath of it.  Based upon these observations, McAdams determined that the fire had been intentionally set.  (*Id.*)

Upon receiving the O&C Investigator's report, State Farm assigned the plaintiffs' claim to State Farm's Special Investigation Unit (SIU) for further evaluation.  (*Id.* at SF0079-0080.)  According to State Farm's records, there were several factors identified that give rise to further investigation, including the fact that the policy had been purchased just a few short weeks prior to the fire; the fact that Ms. Hoffman's divorce decree had been entered the day of the fire, which required her to sell the house and split the proceeds within one year or otherwise pay her ex-husband $15,000; and the O&C Investigator's finding that the fire had been set.  (*Id.* at SF0079.)  There may have been other factors that were cause for suspicion as well, including the fact that the electrical system in the home was not up to code and would need to be overhauled – something that was known since the plaintiffs had originally listed the home for sale, but later removed the listing so the updates could be made.  (Doc. 55, Ex. I, Hoffman Dep. at 90:17-25, 91:1-2, 100:21-25, 101:1-11.)

On July 24, 2013, State Farm notified the plaintiffs that the investigation into the loss remained ongoing, and that State Farm would not be offering coverage at that time.  However, State Farm also was in communication with restoration services to mitigate further damage to the home, something that was

confirmed by letter to the plaintiffs dated July 25, 2013.  (*Id.*, Ex. C at SF0078; Ex. E, Letter.)  In addition, while the investigation was undertaken, State Farm asked ALE to help the plaintiffs to secure temporary housing.  (*Id.*)

State Farm's letter to the plaintiffs requested that they provide sworn statements regarding the proof of loss, a personal property inventory, and recorded statements as required under the terms of the policy.  (*Id.*, Exs. E, B, F.)  At the same time, State Farm continued its investigation into the loss by arranging for an electrical engineer, Bruce Crowley, to inspect and evaluate the fire loss.  (*Id.*, Ex. C, at 75.)  Mr. Crowley's review of the fire scene confirmed the findings of the O&C Investigator, and concluded that the origin of the fire was neither the electrical box nor the elliptical machine.  (*Id.*, Ex. G.)

State Farm took the recorded statements of Joshewa Sink and Jennifer Hoffman on July 31, 2013.  (*Id.*, Ex. C at SF0076.)  On August 20, 2013, State Farm issued another advance payment of $1,500 for ALE.  (*Id.*, Ex. C at SF0064; Ex. K.)

After taking the plaintiffs' statements, and in response to the information they provided, State Farm requested additional information, including signature and notary stamps on the statement of loss, signed authorization forms, copies of cell phone records, divorce documents, realtor documents, mortgage documents, and a worksheet of daily living expenses.  (*Id.*, Ex. L.)  On August 28, 2013, the

9

SIU claims representative, Ted Marziani spoke to Jennifer Hoffman and explained that State Farm had found that the fire did not originate in either the junction box or the elliptical machine and that the investigation remained ongoing. (*Id.*, Ex. C, at SF0062.)

Mr. Marziani wrote again on September 3, 2013, to notify Ms. Hoffman that the sworn statement of loss had been accepted, but the investigation into the fire's cause was continuing and, therefore, no settlement offer could be made at that time. (*Id.*, Ex. M.) On the same day, State Farm issued a reservation of rights letter stating that questions remained regarding the origin of the fire. (*Id.*, Ex. N.) This letter also requested that the plaintiffs submit to examinations under oath (EUO), and identified Scott Grenoble as the attorney who would conduct them. (*Id.*) The policy authorizes State Farm to take EUOs. (*Id.* and Ex. B, at 13.)

Ms. Hoffman spoke with Scott Grenoble and confirmed the plaintiffs' availability for EUOs to take place on September 18, 2013. (*Id.*, Exs. O, and I, Hoffman Dep. at 364:4-18.) However, when the day came to take the EUOs, the plaintiffs did not keep the appointment. (*Id.*, Ex. I, Hoffman Dep. at 364:4-18.) The plaintiffs' decision not to participate in the EUOs was apparently the product of their retention of a public adjuster, Scott Luscavage, who notified State Farm on September 17 that he was representing the plaintiffs and that they would not be attending. (*Id.*, Ex. C at SF0058 and Ex. P.)

10

Mr. Luscavage requested that State Farm continue the EUOs to a later date, and Mr. Grenoble responded by requesting contact to coordinate the rescheduling. (*Id.*, Ex. Q.)   Mr. Luscavage did not respond to this letter, and Mr. Grenoble ultimately notified Mr. Luscavage by letter dated October 11, 2013, that the EUOs would take place on October 28.   (*Id.*, Ex. R.)   Shortly thereafter, however, plaintiffs retained a lawyer who coordinated with State Farm to have the EUOs rescheduled to November 22, 2013.   (*Id.*, Ex. S, Letter from Scott Grenoble to Michael Fiorillo dated November 13, 2013.)   The EUOs were completed on November 22, 2013.

Following the EUOs, the plaintiffs were requested to provide State Farm with cell phone records that had previously been requested but not delivered.  (*Id.*, Ex. U.)  By letter dated December 16, 2013, the plaintiffs' attorney responded with the requested information.  (*Id.*, Ex. V.)

On December 24, 2013, following receipt of the final information from the plaintiffs, State Farm determined that coverage for the loss would be offered, and State Farm's claims representative called the plaintiffs' lawyer and public adjuster to communicate that coverage decision, and also confirmed this decision by letter. (*Id.*, Ex. C at SF0043 and Ex. W.)

As noted, while the SIU was being undertaken, State Farm had also coordinated with a mitigation company to inspect and evaluate the plaintiffs' home

11

for smoke-related issues. (*Id.*, Ex. E.)  The company that State Farm retained, Re-Builders Plus, inspected the property and submitted a report on August 1, 2013, which included an itemized list of restorable and unrestorable items, and provided recommendations regarding mitigation. (*Id.*, Ex. J.)  The report also included photographs of the home that depict the post-fire loss. (*Id.*, at 875-1007.)  On August 6, 2013, State Farm authorized pre-cleaning and other suggested mitigation steps. (*Id.*, Ex. C at SF0074.)  As part of that process, Re-Builders Plus used a company called Dial Electronics to clean electronic items.  The cleaning process was completed in December and State Farm paid for that service. (*Id.*, Ex. C at 45.)

Meanwhile, the plaintiff's public adjuster, Scott Luscavage, prepared a building estimate for structural damage under Coverage A of the policy on October 16, 2013. (*Id.*, Ex. X at SF1164-1173.)  This estimate was furnished during the period when State Farm was continuing to investigate the cause of the fire, and before State Farm had agreed to offer coverage for the loss.  State Farm inspected the property two weeks after making this determination, on January 3, 2014. (*Id.*, Ex. C at 41.)  State Farm representative, Scott Fleming, and representative of Re-Builders Plus and the plaintiffs participated in the inspection. (*Id.*, Ex. C at SF0041 and Ex. Y.)

12

Following the inspection, Mr. Fleming prepared an estimate for $51,100.69 in replacement cost value.   The calculated actual value was $39,293.18, with reimbursable depreciation of $9,006.23, overhead and profit reimbursable depreciation of $1,801.28, and a deductible of $1,000.  (*Id.*, Ex. Z.)  On January 14, 2014, State Farm paid the actual cash value of $39,293.18, less than one month after the coverage decision had been made.  (*Id.*, Ex. Y.)  The amount tendered differed markedly from an estimate that Scott Luscavage prepared, mostly because Mr. Luscavage included in his estimate costs for removing and replacing drywall and insulation.   State Farm declined to provide coverage for these repairs, since Re-Builders Plus had determined that because the fire was so small and contained, it was insufficient to pressurize the interior of the home, which would have necessitated the repairs.  (*Id.*)

In addition, Mr. Luscavage stated that he believed there was fire-related soot behind the drywall, and in response State Farm arranged for carbon testing of the alleged soot on February 3, 2014, and noted these findings:

> PA [public adjuster] expressed Larry's [Larry Scheib from Re-Builders Plus] findings were incorrect and investigation was not thorough.  CR agreed to open walls to investigate.  Larry cut 2 holes on LR front wall and 1 hole on LR right wall . . . . Larry made openings in upstairs bath and rear bedroom with similar results to down stairs.  Accessed front room which had drywall and insulation.  No soot found to insulation and did not appear to be same cavity as [from living room] wall. Also inspected attic and no soot found in attic.  Larry

> took a sample of soot in the basement and a sample from
> every access to send out for carbon analysis to determine
> if carbon present in wall cavities and if so what kind.
> Larry made good point that in the past home could have
> had coal burning furnace for many years.

(*Id.*, Ex. C at SF0038.)  Because the sponge test inside the walls were found to be

insufficient, tape samples were taken on February 20, 2014, and sent to another

third party, EMSL Analytical Inc., for testing and evaluation.  EMSL issued a

report on March 11, 2014, finding an 80% concentration of soot in the basement

where the fire occurred, but no traces of soot on the upper levels and only a clear

trace of char in some of the rooms on the first floor.  (Def. SMF ¶¶ 57-58.)  The

analysts concluded that the soot did not affect the main and second floor wall

cavities, and that the trace amount of char behind some walls was the result of

normal soiling.  (*Id.* ¶ 59; Ex. C, at SF0033-34; Ex. aa.)  State Farm had this

assessment further reviewed by the O&C investigator, Mr. McAdams, who noted

the presence of a furnace in the basement and concluded:

> The basement did have heavy smoke damage, but the
> limited fire damage would not allow a heavy pressure
> buildup moving the smoke much further than any
> blocked areas in the walls.  Some smoke and soot
> staining was found around some vents and receptacle in
> some areas of the first floor, but this would be expected
> as the smoke rose from the basement just below.  There
> should not be any significant charring in the walls since
> the fire did not progress very far away from the fire near
> floor level.

(Doc. 55, Ex. bb.)

State Farm provided the plaintiffs with copies of the EMSL report and McAdams report on April 15, 2014, and April 30, 2014.  (*Id.*, Exs. ee and ff.) Notably, the plaintiffs did not undertake any independent soot or carbon testing and analysis, and the plaintiffs have offered no countervailing evidence that would contradict that set forth in either report that State Farm commissioned, and hence have not demonstrated with actual evidence that first-floor repairs of the extent claimed were necessary or warranted, or that State Farm's refusal to make certain payments for improvements the plaintiffs elected to make amounted to a breach of State Farm's contractual duty.

The plaintiffs also elected to replace a number of windows in the home, and submitted a bill to State Farm in the amount of $2,445.52.  (*Id.*, Ex. nn, p. 3.) Joshewa Sink, during his deposition, testified that the windows were not damaged in the fire or shortly after it occurred.  (*Id.*, Ex. oo, Sink Dep., at 45-54.)  For her part, Ms. Hoffman attested that the windows were replaced because she determined that one of the windows had a crack in the pane and she felt it was appropriate to replace all four windows rather than the one that was damaged.  (*Id.*, Ex. I, Hoffman Dep. at 246:15-25.)

The plaintiffs also decided to make improvements to the flooring throughout the home following the fire, even though State Farm had already paid money to have the hardwood floors refinished, which it did because of its duty to pay the

15

cost of repair or replacement with similar construction any parts of the property directly damaged by the fire.[2]   Prior to the fire, the plaintiffs' home was laid primarily with hardwood flooring.   Thus, the front bedroom had hardwood floors and an area rug, as did the second floor hallway.   Following the fire, the plaintiffs elected to install carpeting in these areas.   (*Id.*, Ex. oo, Sink Dep. at 89:13-25, 90:4-5, 91:14-19, 95:5-20, 99:20-25, 100:1-25, 101:1-16.)   When asked why the plaintiffs decided to carpet the second floor – the expense of which they submitted to State Farm – the plaintiffs acknowledged that the carpeting was unrelated to the loss.   (*Id.*, Ex. oo, at 95:25 – 96:1-8.)   The plaintiffs also submitted a bill to State Farm for $2,450 for the installation of padding and laminate flooring on the first floor even though State Farm had already paid to have the hardwood floors refinished; notably, the flooring work was undertaken by JJ Family Contracting, which is a business operated by the plaintiffs.   (*Id.*, Ex. oo, nn, cc.)   State Farm balked at paying for the carpeting and laminate flooring after paying $3,128.83 to refinish the hardwood floors that had incurred damage.   (*Id.*, Ex. cc.)

State Farm also worked with the plaintiffs to calculate the reimbursable depreciation that was recoverable upon proof of repairs, which the policy provided

---

[2] The insurance policy specifically provides that "[State Farm] will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the Declarations, the damaged part of the property covered under SECTION I COVERAGES, COVERAGE A – DWELLING." (Doc. 55, Ex. B, at 11.)

for.  (*Id.*, Ex. B, at 11 Section I – Loss Settlement, Coverage A – Dwelling.)  On June 28, 2014, the plaintiffs met with State Farm's claims adjuster, Scott Fleming, to discuss any outstanding issues and payments.  (*Id.*, ex. cc.)  The parties came to an agreement following that meeting, which was confirmed by letter dated July 9, 2014, and the payment of $18,149.28 in recoverable depreciation and additional costs for damage to the home.  (*Id.*)

The same letter provided a summary of loss detailing the coverages and payments for damages to the home under Coverage A of the policy.  The total paid for damage to the dwelling was $60,452.02, which included an initial payment of $39,293.18; a supplemental payment for wall damage of $2,009.56; and a final payment of reimbursable depreciation of $18,149.28.  (*Id.*, Exs. cc, dd.)

The policy also provided coverage for losses to the plaintiff's personal property damaged in the fire under Coverage B.  The plaintiffs' public adjuster provided State Farm with a contents estimate/list on October 16, 2013, and claimed $70,009.98 for listed items that were damaged.  (*Id.*, Ex. X, at SF1174-1183.)  This amount was later increased by $2,326.70.  (*Id.*, ex. jj.)  As part of the adjustment of this claim, State Farm asked Re-Builders Plus to provide an estimate for the listed items, and asked Dial Electronics to provide an estimate for the cost to clean the electronics listed.  In addition, CRDN was retained to evaluate and estimate the costs for cleaning the clothing on the second floor of the home.  (*Id.*, Ex. J, Ex. C

17

at SF0040-41.)   Numerous items in Re-Builders Plus' list were found to be no longer salvageable, and State Farm paid the plaintiffs $20,549.97 in the undisputed portion of the contents claim on January 14, 2014 – meaning items that State Farm and the plaintiffs agreed needed to be replaced.  (*Id.*, Exs. I, ii, and gg.)   Other items were determined to be salvageable or restorable, and State Farm agreed to pay only the amounts necessary to have these items restored, cleaned or otherwise salvaged unless the plaintiffs provided information sufficient to dispute that conclusion.  (*Id.*, Ex. ff.)   Still other items, including furniture, art, and a rifle, required further information from the plaintiffs before payment could be considered.  (*Id.*)   According to State Farm, the insurer made a number of attempts to resolve the contents claim with the public adjuster, but the parties could not come to an agreement.   Thereafter, the plaintiffs worked directly with State Farm – even after the lawsuit had been filed – to continue negotiating payment for personal items, and State Farm made an additional payment on July 9, 2014, bringing the total paid under the Contents coverage to $35,045.51, with available recoverable depreciation of $16,542.93.  (*Id.*, Exs. dd, hh.)

The plaintiffs have also brought claims under Coverage C, for alternate living expenses (ALE).  In the complaint, the plaintiffs complain about the service provided by ALE Solutions, including the fact that no replacement home in the Bloomsburg area was located and the plaintiffs found their own accommodations

in Berwick, Pennsylvania, approximately 25 miles away.   (Compl., ¶¶ 19-20.)
According to State Farm, relying on online mapping software, the three-bedroom
home that the plaintiffs elected to rent was actually located 12 miles from their
house in Bloomsburg, and the plaintiffs acknowledged that there was very little
housing stock available nearby for short-term rental.   (Doc. 55, Ex. I, Hoffman
Dep. at 130:11-25, 131:1-16.)    Ms. Hoffman also acknowledged that ALE
Solutions worked with her to find available housing while her family was in a
hotel.   (*Id.*, at 117:3-16, 130;24-25, 131:1-15.)   The plaintiffs also conceded that
arrangements made to rent a closer home fell through, not because of fault with
ALE Solutions, but because an issue arose with the current lessees.   (*Id.*, at 131-
132.)   When the plaintiffs were eventually able to move into the rental home in
Berwick, it is conceded that ALE Solutions handled the arrangements for this
move, including negotiating the lease.   (*Id.*, at 118-119.)   According to State Farm,
and apparently undisputed by the plaintiffs, State Farm has paid for all housing
expenses, gas expenses, utility bills, moving charges, rental furniture bills, and
other expenses relating to the ALE stemming from the fire loss.   (Def. SMF ¶ 118.)

Notwithstanding this evidence, the plaintiffs initiated this lawsuit claiming
that State Farm's claims handling was egregiously lacking in professionalism and
badly mishandled, and that State Farm breached its contractual duties by

19

shortchanging the plaintiffs for a number of expenses. Review of the record reveals a lack of evidentiary support for this assertion.

First, the plaintiffs have alleged that State Farm breached its duties under Coverage A, for the home itself, by failing to pay $3,009.56, but it is unclear how the plaintiffs came up with this figure. Ms. Hoffman, in her deposition, testified that the figure was determined by comparing the adjustment that State Farm came up with against the amount that State Farm paid; but Ms. Hoffman conceded that she did not know whether the amount included depreciation and the plaintiffs' own deductible. (*Id.*, Ex. I, at 133-34.) State Farm has provided documentation showing that the calculated replacement cost of the dwelling was $60.452.02, with a paid amount of $59,452.02, less a $1,000 deductible. (*Id.* at ¶122, Exs. C, Y, ee., cc.)

The plaintiffs' claim is further confusing in that it was purportedly supplemented by information from counsel that included a statement of claimed building damages dated July 2, 2014, which stated that the plaintiffs had provided receipts documenting damages under Coverage A totaling $62,684.37. (Def. SMF ¶¶ 123-124, Ex. nn.) The letter also erroneously claims that the plaintiffs had only received $41,302.74 in payment from State Farm, which is contradicted by the documentary evidence that State Farm has provided, and is also materially

different from the amount of additional loss under Coverage A that the plaintiffs claim in the complaint.

Of particular note here is the fact that the amounts claimed by the plaintiffs under Coverage A -- $62,684.37 – includes $6,500 for an invoice from Charles Franklin of MFF Electric that new undisputed evidence obtained during this litigation shows had nothing to do with work done on the plaintiffs' home, but likely related to work performed on another house where the plaintiffs' business, JJ Family Contracting, was doing work.  (*Id.*, Ex. rr, at 10-11.)   The record also reveals that numerous claimed losses were later conceded by the plaintiffs to be not related to the fire, which when taken away from the amount that State Farm actually paid under Coverage A reveal that State Farm paid more than the plaintiffs' legitimately claimed in losses to the dwelling.  (Def. SMF ¶ 128.)

The complaint also makes a claim for $16,542.93 for losses to contents of the home under Coverage B.  Yet, during her deposition, Ms. Hoffman testified that she had "no idea" how she came up with that amount.  It now appears that the plaintiffs were seeking recovery of certain depreciation to the contents, although the evidence on this score is somewhat unclear.  What is clear is that under the terms of the policy, in order to recover for claimed depreciation the plaintiffs were required to repair or replace personal items and provide proof of the repairs or replacement to State Farm.  (*Id.*, Ex. B, at 12.)  As noted above, many of the items

claimed had been determined by State Farm to be capable of cleaning or repair –

something that was communicated to the plaintiffs in February, 2015, when it was

explained that no additional payments could be made unless and until the plaintiffs

provided further information.  (*Id.*, Ex. pp.)  State Farm has represented, and it

does not appear disputed, that the plaintiffs did not provide this further

documentation, and Ms. Hoffman testified during her deposition that all receipts

related to the loss had been submitted to State Farm.  (*Id.*, Ex. I, Hoffman Dep. at

115-116.)  During that deposition, State Farm's counsel asked Ms. Hoffman to

submit anything else that she might have within two weeks so that it could be

considered, and Ms. Hoffman said that she would do so.  (*Id.*)  Nevertheless, Ms.

Hoffman did not furnish State Farm with any additional information for several

months, until approximately one week before State Farm filed the instant motion,

when the plaintiffs' counsel sent State Farm a letter – well after discovery in this

case had closed, and after the two-year deadline for submitting receipts to prove

recoverable depreciation under the policy.[3]

---

[3]  Although State Farm has presented this information and evidence in defense against the plaintiffs' claims in this litigation, the insurer has nevertheless represented that its claims representative will evaluate the belated submissions to determine whether any further recovery beyond that already paid is available. (Doc. 55, at 41 n.20.)

III.   **STANDARD OF REVIEW**

Rule 56(a) of the Federal Rules of Civil Procedure provides as

follows:

> A party may move for summary judgment, identifying
> each claim or defense – or the part of each claim or
> defense – on which summary judgment is sought.   The
> court shall grant summary judgment if the movant shows
> that there is no genuine dispute as to any material fact
> and the movant is entitled to judgment as a matter of law.
> The court should state on the record the reasons for
> granting or denying the motion.

Fed. R. Civ. P. 56(a).   For purposes of Rule 56, a fact is material if proof of its

existence of nonexistence might affect the outcome of the suit under the applicable

substantive law.   *Haybarger v. Laurence Cnty. Adult Prob. & Parole*, 667 F.3d

408, 412 (3d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986)).   For an issue to be genuine, "all that is required is that sufficient

evidence supporting the claimed factual dispute be shown to require a jury or judge

to resolve the parties' differing versions of the truth at trial."   *Id.* (quoting

*Anderson*, 477 U.S. at 248-49).

Accordingly, in support of a motion for summary judgment, the moving

party must show that if the evidence of record were reduced to admissible evidence

in court, it would be insufficient to allow the non-moving party to carry its burden

of proof.   *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986).   Provided the moving

23

party has satisfied this burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Instead, if the moving party has carried its burden, the non-moving party must then respond by identifying specific facts, supported by evidence, which show a genuine issue for trial, and may not rely upon the allegations or denials of its pleadings. *See Martin v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007); *see also* Fed. R. Civ. P. 56 (c).

In adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, *Anderson*, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. *Id.* Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *Id.* at 252; *see also Big Apple BMW*, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent
> need not match, item for item, each piece of evidence
> proffered by the movant. In practical terms, if the

24

> opponent has exceeded the "mere scintilla" threshold and
> has offered a genuine issue of material fact, then the
> court cannot credit the movant's version of events against
> the opponent, even if the quantity of the movant's
> evidence far outweighs that of its opponent.  It thus
> remains the province of the factfinder to ascertain the
> believability and weight of the evidence.

*Id.*  In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted); *NAACP v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011).

## IV.   DISCUSSION

As noted, the plaintiffs have brought two claims in this action, one for breach of contract and one for bad faith.  These claims are addressed separately below.

### A.   Breach of Contract

The plaintiffs claim that State Farm breached its contractual obligations under the policy by failing to pay damages incurred to the dwelling, personal property, and for alternate living arrangements while the home was remediated. This claim does not maintain that State Farm failed to indemnify the plaintiffs; instead, the plaintiffs apparently take issue only with the amount of monies that State Farm has paid for their claimed losses.  Yet, while the plaintiffs quarrel with

this reimbursement, in many instances they acknowledge that they have no idea how they arrived at higher cost figures, admit that they sought reimbursements for home improvements that were unrelated to the fire, and submit bills for payment which simply, and undeniably, do not reflect work done on their home. The Court finds that the plaintiffs have failed to come forward with sufficient evidence in support of this narrow contract claim. The Court further finds that the undisputed evidence that was timely submitted indicates both: (1) that the plaintiffs failed adequately to support their claim for damages; and (2) strongly suggests that the plaintiffs were, in fact, overpaid in at least one instance by improperly seeking reimbursement for electrical work that the plaintiffs had contracted to be done on another property.

Under Pennsylvania law, a plaintiff bringing a claim for breach of contract must establish three elements to prevail: (1) the existence of a contract; (2) a breach of a duty imposed by that contract; and (3) resultant damages. *Pennsy Supply Inc. v. American Ash Recycling Corp*., 895 A.2d 595, 600 (Pa. Super. Ct. 2006). In general, a breach of contract claim will not be sustained where the insurer has paid proceeds of the policy, since if the plaintiff has received everything that was due under the policy, there can be no damages. *Fitzpatrick v. State Farm Ins. Companies*, No. 09-1498, 2010 WL 2103954, *2 (W.D. Pa. May 25, 2010); *Amitia v. Nationwide Mut. Ins. Co.*, No. 3:08cv335, 2009 WL 111578,

*3 (M.D. Pa. Jan. 15, 2009). Pennsylvania courts have, moreover, established a general rule that "it is a necessary prerequisite . . . for the insured to show a claim within the coverage provided by the policy." *Betz v. Erie Ins. Exchange*, 957 A.2d 1244, 1256 (Pa. Super. Ct. 2008) (citing *Miller v. Boston Ins. Co.*, 218 A.2d 275, 278 (Pa. 1966)). At summary judgment, therefore, it is incumbent upon the nonmovant-insured to point to evidence to support a claim for damages that is owed under the policy. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

State Farm's defense to the breach of contract claim is straightforward: the insurer argues that there can be no claim for breach here because State Farm indemnified the plaintiffs for all of the recoverable losses they incurred to their home and personal property and the ancillary costs for replacement housing, and because the plaintiffs have not come forward with any timely evidence to show that the insurer failed to meet its obligation to indemnify for any loss claimed. Indeed, State Farm points to evidence in the record that would show that the insurer actually overpaid for losses claimed due to the fire, and appropriately declined payment for claims for damages not directly caused by the fire or for which the plaintiffs did not provide substantive support. In addition, State Farm notes that the plaintiffs have belatedly sought recovery of amounts paid for a

security deposit on their temporary housing, despite the documented fact that it was State Farm that made this payment in the first instance. (Doc. 62, Ex. A.)

At the outset, the Court is constrained to underscore that in response to the defendants' thorough moving papers, which carefully detail the insurer's conduct, calculations and payments made in the adjustment of this claim, the plaintiffs were obligated to come forward with some evidence to support their claims that State Farm breached its duty to indemnify. Simply put, they have not done so, but have consistently obfuscated both their claimed damages and the support for those damages. Instead, it appears that the plaintiffs maintain that if they assert – however belatedly – that they are owed more, or that they take issue with the insurer's adjustment of the claim, they are automatically entitled to a jury trial on a breach of contract claim. The plaintiffs are incorrect on this score, and their failure to sustain their contract claim with sufficient evidentiary support is now fatal to that claim. Moreover, their wholly belated efforts to thrust upon the defendants an entirely new calculation of damages, after the close of discovery and immediately prior to the defendant moving for summary judgment is simply unreasonable. The shortcomings are highlighted in the plaintiffs' brief where they seem to present an entirely new calculation of damages, one that dramatically exceeds that sought in the original complaint, and even the amount that was later demanded in July 2015

when counsel and the public adjuster came up with still a different figure, and one that failed to account accurately for the amounts that State Farm had already paid.

There is no dispute that following its investigation into a suspicious fire, State Farm agreed to indemnify the plaintiffs for their losses.   State Farm has presented evidence showing the timeline of its adjustment, its efforts to negotiate with the plaintiffs and their representatives, the calculations for the damages, and the reasons that State Farm gave for declining certain payments that the plaintiffs sought, on the grounds that there was limited support for those claims, or because they were otherwise not recoverable as direct losses from the fire.   Other than to demand that State Farm make further payments, the plaintiffs have offered no credible evidence to support their evolving damages calculation.   State Farm has not only demonstrated the absence of evidence offered in support of many categories of damages and the mathematical errors that the plaintiffs and their adjuster have made in calculating their claims, but the insurer has also carefully detailed instances where the plaintiffs have sought payments for work that was performed by a subcontractor for work done on a different property, and where they have sought reimbursement for home improvements such as windows and flooring that were also not shown to be direct losses.   Indeed, the record is undisputed that the plaintiffs are seeking recovery of amounts paid for carpeting and laminate flooring that they agreed under oath was not necessitated by the fire,

even after State Farm had paid to remediate the flooring on the first floor that was affected.

Review of the plaintiffs' brief, moreover, reveals no citation to any evidence of record in support of their claim for breach of contract; instead, the plaintiffs rely on argument and bare assertions which are insufficient as a matter of law in response to a properly supported motion for summary judgment. Since the plaintiffs' breach of contract claim is limited to a dispute over the amounts that were paid for damages directly related to the fire, they were obligated to come forward with timely evidence that would at least create a disputed issue of material fact with respect to State Farm's claim adjustment in this case, and they have not done so, and the evidence of record reveals not only that the plaintiffs have been fully indemnified for their claim, but may in fact have been overpaid in some instances.

## B.     Bad Faith

The plaintiffs devote the majority of their argument to their bad faith claim, where they have claimed that State Farm violated Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. Ann. § 8371. The plaintiffs alleged that State Farm's bad faith was evidenced by the insurer failing to act promptly on the plaintiffs' claims, conducting a slow and meandering investigation into the fire, failing to conduct a reasonable investigation and make timely payment on the claim, and failing to

negotiate a reasonable settlement of the plaintiffs' claims. The evidence shows otherwise.

Under Pennsylvania law, "[i]n an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured," the court can award the claimant interest, punitive damages, court costs and attorney fees. 42 Pa. Cons. Stat. Ann. § 8371. The Third Circuit has explained "bad faith" in this context as follows:

> "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.,* good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005). Although an insurer's conduct need not be fraudulent to rise to the level of bad faith, "mere negligence of bad judgment is not bad faith." *Id.* (quoting *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. 2004). The insured bears the burden of showing that "the insurer breached its duty of good faith through some motive of self-interest or ill will." *Id.* "To recover for bad faith, 'a plaintiff must show by clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim.'" *Post v. St. Paul Travelers Ins. Co.*, 691

F.3d 500, 522 (3d Cir. 2012) (quoting *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006)).   The defendant can defeat a plaintiff's claim by demonstrating that it had a reasonable basis to deny the claim.   *Id.* at 523. Furthermore, "[a]t the summary judgment stage, the insured's burden in opposing a summary judgment motion brought by the insurer is 'commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial.'"   *Babayan*, 430 F.3d at 137 (quoting *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *see also Verdetto v. State Farm Fire and Cas. Co.*, 837 F. Supp. 2d 480, 484 (M.D. Pa. 2011) ("[I]n order to defeat a motion for summary judgment, a plaintiff must show that a jury could find by 'the stringent level of clear and convincing evidence' that the insurer lacked a reasonable basis for its handling of the claim and that it recklessly disregarded its unreasonableness."), *aff'd* 510 F. App'x 209 (3d Cir. 2013); *McCabe v. State Farm Mut. Auto. Ins. Co.*, 36 F. Supp. 2d 666, 669 (E.D. Pa. 1999).

It is not bad faith for an insurance company to "conduct a thorough investigation into a questionable claim." *Babayan*, 430 F.3d at 138.  Accordingly, courts applying Pennsylvania law have found that an insurer satisfies its burden by "showing 'a reasonable basis' for investigating a claim, and is thus entitled to judgment as a matter of law, where it demonstrates the existence of certain 'red

flags' which prompted it to further investigate an insured's claim." *Verdetto*, 837 F. Supp. 2d at 484 (quoting *Brown v. Liberty Mut. Ins. Group*, 2001 U.S. Dist. LEXIS 781, *8-11, 2001 WL 87741, *3-4 (E.D. Pa. Jan. 30, 2001)).

In this case, the record amply supports State Farm's defense that certain "red flags" existed that justified it in undertaking an investigation into the cause of the fire and the plaintiffs' claims, including the fact that the insurance policy had been purchased immediately prior to the fire and the determination by two fire experts that it had been caused by arson. The record also reveals that, rather than wasting time, State Farm began an investigation immediately, while at the same time advancing money to the plaintiffs for immediate needs such as clothing and hotel expenses. The record further shows that although State Farm promptly undertook investigation into the fire's cause, the plaintiffs contributed directly to the duration of the investigation by delaying their examinations under oath, which State Farm had requested, roughly two months earlier. During this investigation, State Farm continued to pay the plaintiffs' housing and living expenses, despite the ongoing nature of the investigation and the possibility that at the end of that process coverage would not be offered. Although the plaintiffs complain about having spent some time at a Holiday Inn, Ms. Hoffman also acknowledged that this was not due to any fault on State Farm's behalf, but was due entirely to a lack of housing options in the immediate area.

33

Contrary to the plaintiffs' unsubstantiated claims that State Farm was unresponsive, as discussed in the factual background to this memorandum State Farm has attached correspondence and other documents to its appendix which evidence that the insurer routinely and appropriately responded, and that attendant delays in the initial investigation and ultimate adjustment of the claim were not solely or even principally attributable to State Farm.  Indeed, the evidence shows that after State Farm concluded its investigation into the cause of the fire, which itself was subject to some delay on the part of the plaintiffs, the insurer made an initial payment on the claim within weeks and continued to make additional payments as the plaintiffs provided documentation.  The plaintiffs have not responded with any countervailing evidence to support their assertion that State Farm's conduct of the investigation was unreasonable, overlong, unjustified, or undertaken for improper purpose.  Instead, in response to the defendants' motion, the plaintiffs have offered little more than a narrative overview of the law of bad faith in Pennsylvania.  Their own allegations are insufficient to overcome the defendants' motion where they are unaccompanied by timely evidence that comes close to meeting the high bar applicable in claims of bad faith, which requires clear and convincing evidence that the insurer acted frivolously or was motivated by self-interest or ill will in denying benefits.  *Terletsky v. Prudential Prop. & Cas. Ins.* Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994).  The plaintiffs have not shown

that State Farm lacked a reasonable basis to deny benefits, or to undertake an investigation into a claim that was marked by at least two red flags.

Indeed, the plaintiffs' response relies on the evidence that the defendant compiled and submitted in this case, and essentially invites the Court to wade into that evidence in order to find some evidence that could rise to the level needed for the plaintiffs to carry their burden on this claim. This invitation is antithetical to good summary judgment practice, and the plaintiffs would do well to remember that "'[j]udges are not like pigs, hunting for truffles buried in the record.' *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))." *United States v. Dentsply Int'l, Inc.*, No. 12-7199, 2016 WL 1403991, at *1 (E.D. Pa. Apr. 11, 2016) Further, by adopting this approach, the plaintiffs do not effectively dispute the defendants' documented timeline with respect to the handling of the claim, and they cannot rely upon unsubstantiated allegations in order to survive the defendants' motion on a claim upon which they bear the burden of proof by clear and convincing evidence.

## IV.   <u>CONCLUSION</u>

There is no dispute that in response to a basement fire that caused some damage to the home, State Farm investigated the fire after becoming aware of cause for suspicion regarding the cause of the fire.  That investigation concluded

after several months, and was delayed in substantial part by the plaintiffs themselves. After that investigation ended and coverage was offered, State Farm ultimately paid the plaintiffs nearly $150,000 in benefits for damage to the dwelling, for personal items, and for alternate living expenses. There remained some dispute between the parties over the extent of coverage offered, but ultimately the plaintiffs have undermined their claim by causing their damages calculation to fluctuate wildly over time, and to remain unsupported by timely evidence. Likewise, the plaintiffs have not offered sufficient evidence to support a bad faith claim, particularly in light of the elevated standard of proof applicable to that claim. Summary judgment is, therefore, warranted.[4]

An order consistent with this memorandum shall issue separately.

---

[4]   Having concluded that State Farm is entitled to summary judgment on both of the claims in this case, the remaining pending motions in this case, including motions to exclude late-filed evidence and motions in limine (Docs. 61, 63, 65, 67) will be denied as moot.